# In the United States Court of Federal Claims

| | |
|---|---|
| TRAX INTERNATIONAL CORP.,<br>*Plaintiff,*<br>v.<br>THE UNITED STATES,<br>*Defendant,*<br>and<br>SOUTHWEST RANGE SERVICES, LLC,<br>*Defendant-Intervenor.* | No. 26-796<br>(Filed: October 5, 2026)[1]<br>Filed under seal: September 11, 2026<br>Reissued: October 5, 2026 |

**ORDER**

This bid protest arose from the U.S. Army's ("Army" or "Agency") award of a test and evaluation services contract on the White Sands Missile Range ("WSMR"), a military base in New Mexico. Plaintiff TRAX International Corp. ("TRAX") challenged that award. *See generally* Compl., ECF No. 1. On September 3, 2026, the Court granted the Government's and Defendant-Intervenor's cross-motions for judgment on the Administrative Record ("AR"), finding the Army's decision to award the contract to Southwest Range Services, LLC ("SRS") was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. ECF No. 70.

Before filing its motion for judgment on the AR, TRAX moved to complete the AR, alleging the Government had failed to include documents reflecting the Army's use of FAST TRACK, an Artificial Intelligence ("AI") platform, to evaluate the offerors' proposals. ECF No. 28 ("Mot. to Complete"). TRAX asserted the Army's reliance on FAST TRACK introduced errors into the evaluations of the three offerors: [***] (Offeror A), TRAX (Offeror B), and SRS (Offeror C). Compl. ¶¶ 57, 62–67. The Government disputed TRAX's claims, maintaining that no AI-generated documents were viewed or relied upon by the Source Selection Evaluation Board ("SSEB") or other members of the Army procurement team. Def.'s Resp. to Mot. to Complete at 3, ECF No. 32.

Having reviewed the Parties' briefing on the Motion to Complete and statements by counsel at the August 19, 2026, hearing, *see* ECF No. 73 ("Tr."), the Court determines that the below-identified Government counsel, *infra* Part IV, must **SHOW CAUSE** why they should not

[1] This Order was filed under seal on September 11, 2026. ECF No. 74. The parties jointly proposed redactions. ECF No. 78. Accordingly, the Court reissues this Order with the agreed upon redactions, which are noted with bracketed asterisks ([***]).

be sanctioned for factual misrepresentations in the Government's briefs and declarations. The potentially sanctionable factual assertions are outlined below.

## I. Motion to Complete: Procedural History

The Government responded to Plaintiff's Motion to Complete, arguing three AI outputs corresponding to the three offerors should not be included in the AR. *See generally* Def.'s Resp. to Mot. to Complete. Defendant stated the only AI output viewed by the SSEB was the report for [***], which is not a party to this action. *Id.* at 2–3. And because none of the AI reports were deemed usable, they were never entered into the contract file nor utilized in the decision-making process. *Id.* In support of its position, the Government filed two declarations: the first from [***], SSEB Chairperson for the WSMR Mission Support Services ("MSS") solicitation, and the second from [***], Procurement Analyst with Mission and Installation Contracting Command Headquarters, Theater Support Center. Def.'s Ex. A ("[***] Decl."), ECF No. 32-1; Def.'s Ex. B ("[***] Decl."), ECF No. 32-2.

On July 7, 2026, the Court granted in part Plaintiff's Motion to Complete the AR as to the AI evaluation for [***]. ECF No. 38. The Court also ordered the Government to supplement the existing declarations and answer specific questions regarding the use of the AI tool to evaluate TRAX's and SRS's proposals. The supplemental declarations were filed on July 9, 2026. Def.'s Ex. C ("Supp. [***] Decl."), ECF No. 41-3; Def.'s Ex. D ("Supp. [***] Decl."), ECF No. 41-4.

On July 10, 2026, the Court granted the remainder of Plaintiff's Motion to Complete. It ordered the Government to produce the AI evaluations of TRAX's and SRS's proposals and file all three AI evaluations with the Court as part of the AR. Order, *TRAX Int.'l Corp. v. United States*, No. 26-796 (Fed. Cl. Jul. 10, 2026). The parties were also directed to file supplemental briefs on the relevance and impact of the additional documents on Plaintiff's Complaint. *Id.*

## II. The Government's Lack of Candor

In his declaration, Procurement Analyst [***] explained he was tasked with assessing the capability of FAST TRACK "to determine whether it could be used in future source selections." [***] Decl. ¶ 4; *accord* Gov't Resp. to Mot. to Complete at 2. As part of this assessment, [***] created AI outputs for all three offerors involved in the WSMR procurement. [***] subsequently displayed the AI output for [***] on a screen for viewing during an SSEB meeting. [***] Decl. ¶ 5. The SSEB "did not receive digital or physical copies of [***] output." Gov't Resp. to Motion to Complete at 2. The SSEB concluded the document "[was] not useable and could not be used as a reliable tool." [***] Decl. ¶ 4.

On July 7, 2026, the Court granted TRAX's Motion to Complete as to [***], since the SSEB had in fact reviewed the AI evaluation of [***] proposal. The Court could not, on the record then before it, determine whether the AI-generated evaluations of TRAX and SRS were reviewed by anyone involved in the procurement. To resolve that question, the Court ordered the declarants to supplement their original declarations by answering the following questions:

> (1) What was [***] role with respect to the White Sands Missile Range Mission Support Services (WSMR MSS) procurement (Solicitation W51EW7-25-R-

> A003)? Did [***] have any decision-making authority over or decision-making role in this procurement?
>
> (2) Did [***] use FAST TRACK or any other AI tool to generate summaries or evaluations of the proposals for Offerors B and/or C?
>
> (3) Other than [***], did any individual with a decision-making role in this procurement view an AI-generated summary or evaluation of Offeror B's or Offeror C's proposal?

*See* Order Granting in Part Mot. to Complete.

In his supplemental declaration, [***] acknowledged for the first time that he shared the TRAX and SRS AI summaries with three individuals—[***], [***], and [***]—but stated that none "were decisionmakers in the source selection process for the WSMR MSS procurement." Supp. [***] Decl. ¶ 5. [***] supplemental declaration similarly stated "[n]either I nor any member of the Source Selection Evaluation Board (SSEB) viewed any AI-generated summary or evaluation of Offeror B's or Offeror C's proposal." Supp. [***] Decl. ¶ 3.

Both supplemental declarations contained substantive errors: two of the three individuals who received the FAST TRACK evaluations of TRAX's and SRS's proposals were SSEB members [***] and [***] (who also served as the Contracting Officer ("CO")). Tab 211 at AR 4011 (Source Selection Training Presentation identifying [***] as the Past Performance Chair and [***] as a Past Performance Member of the SSEB); Tab 263 at AR 5300 (Past Performance Evaluation Report signature block identifying [***] as WSMR MSS SSEB Chairperson and [***] as WSMR MSS SSEB Member).

At oral argument on the cross-motions for judgment on the AR, the Court questioned Government counsel about the declarations. The Government argued that although [***] and [***] were SSEB members, their roles were limited to evaluating Past Performance, while the AI analysis concerned only the technical evaluation. Tr. at 9. But this distinction does not cure the misrepresentations in the declarations, which claimed that no SSEB member, not merely the technical evaluators, had reviewed the AI-generated documents. [***] statement that no SSEB member (and [***] statement that no decisionmaker) viewed the AI evaluations of Offeror B's or C's proposals was wrong, since [***], CO and SSEB member, received the AI outputs. *See* Supp. [***] Decl. ¶ 3; Supp. [***] Decl. ¶ 5.

Not only did the supplemental declarations contain this factual error, but they also revealed the original declarations were incomplete. Both [***] and [***] original declarations asserted that no SSEB member saw or relied on AI-generated information related to any offeror other than [***]. [***] Decl. ¶ 5; [***] Decl. ¶ 4. [***] supplemental declaration showed this was false: he had shared the TRAX and SRS AI outputs with two SSEB members. Supp. [***] Decl. ¶ 5. The Court addressed this discrepancy at the hearing:

> THE COURT: And [***] and [***] were past performance members of the SSEB, but they were still members, and that wasn't what the declaration said . . . . Regardless of whether they relied on it, they were shown it. And that

> wasn't accurately represented to the Court. And I assume agency counsel was involved in preparing those responses to the questions from the Court.
>
> MR. HOFFMAN: Yes, Your Honor.

Tr. at 11.

In response to further questioning about which SSEB members viewed the AI outputs, Government counsel acknowledged the error and stated that he was not aware until the hearing that [***] and [***] were SSEB members. Tr. at 9. He stated: "I sincerely apologize. Obviously, had I been aware, I would not have allowed those representations to go forward." Tr. at 12.

In briefing the Motion to Complete, the Government was also unequivocal that no AI tool was used in evaluating any offeror's proposal. *See* Gov't. Supp. Br. ("At no point during the SSEB evaluations, did AI tools aid, contribute to or assist in the performance of evaluations for any of the offeror's proposals." (quoting [***] Decl. ¶ 4)); Joint Letter at 3, ECF No. 27 ("Contrary to TRAX's allegations, the AI documents . . . were not reviewed and considered by the Army for this procurement (and therefore are irrelevant) . . . ."). The Government further represented that "[t]he SSEB did not amend or change Offeror A's evaluations based on the AI tool," Gov't. Resp. to Mot. to Complete at 3 (citing [***] Decl. ¶ 4), and "the results were discarded and not used for making the decision." Joint Letter at 3.

The Government's representations are contradicted by the record. As TRAX points out in its supplemental brief, the SSEB's evaluation of [***] contains multiple passages that are nearly identical, sentence for sentence, to the AI-generated evaluation of [***] proposal. Pl.'s Supp. Br. at 4–5 (comparing AR Tab 261 at 5059 with AR Tab 434 at 9089; AR Tab 261 at 5059 with AR Tab 434 at 9090). It strains credulity that this degree of overlap could be coincidental.

Any substantive or textual overlap is minimal for TRAX and SRS. While this does not rule out reliance on the AI evaluations, it makes it harder to determine whether the SSEB relied on them. Regardless, reliance is not the standard for including documents in the AR. *See Competitive Innovations, LLC v. United States*, 175 Fed. Cl. 296, 303 (2025) (explaining the presumption of AR completeness "may be rebutted by 'clear evidence of material that was *generated or considered* by the agency but excluded from the record'" (emphasis added) (citation omitted)); *see also Oak Grove Techs., LLC v. United States*, 156 Fed. Cl. 594, 600 (2021) ("The administrative record consists of all documents and materials directly *or indirectly* considered by the agency decision maker in making the challenged decision." (citation omitted)), *aff'd*, 116 F.4th 1364 (Fed. Cir. 2024). The Court's inquiry in deciding a motion to complete turns on what documents were generated or considered during the decision-making process, not whether they influenced the final evaluation. Thus, the Government's candor about whether any decisionmaker had viewed the two remaining AI evaluations was imperative.

Twice, the Government filed declarations which omitted the fact that sitting SSEB members (and the CO) had received the AI-generated evaluations the Government represented no decisionmaker had seen. "That omitted half of the answer is clearly material to the issue before the court." *FlightSafety Defense Corp. v. United States*, 173 Fed. Cl. 699, 707 n.2 (2024).

### III. This Court's Sanctioning Authority

Rule 11 of the Rules of the United States Court of Federal Claims ("RCFC") imposes obligations on parties making representations to the Court. The Rule provides in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

RCFC 11(b)(3)-(4).

An attorney's failure to meet their obligations under Rule 11 authorizes a court to impose sanctions, on motion or on its own initiative, against any attorney, law firm, or party responsible for a violation, after notice and a reasonable opportunity to respond. RCFC 11(c). A court need not find bad faith to impose sanctions, nor does a showing of subjective good faith excuse a violation. *See, e.g.*, *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). As such, the Court is not required to find that any single individual acted with subjective intent to mislead to find a Rule 11 violation; a failure to conduct a reasonable inquiry before making representations to the Court is independently sanctionable. *See Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997).

The Court may also enforce the duty of candor, including the duty not to play fast and loose with unsupported statements or knowingly or recklessly false assertions. *See Multiservice Joint Venture, LLC v. United States*, 85 Fed. Cl. 106, 112 (2008) (explaining that "[t]his Court's inherent authority to enter sanctions is embodied in [RCFC 11, which] require[es] a reasonable inquiry into statements alleged in papers filed").

The duty of candor falls with particular weight on Government counsel, whose client "is not only the agency they represent but also the public at large." *Housing Auth. of City of Slidell v. United States*, 149 Fed. Cl. 692, 702 (2020) (citation omitted). The Government had repeated opportunities to be forthcoming about whether the three AI-generated evaluations TRAX identified were in fact reviewed by the Agency, and to what extent. What the Government offered instead was a shifting and, at times, inaccurate account.

Because the Government controls the Administrative Record, its representations about that record must be beyond reproach. Plaintiff should not have had to file and litigate its Motion to Complete (nor should the Court have had to adjudicate one) to obtain what the Government was required to produce and accurately represent in the first instance.

## IV. Questions to Be Addressed

This Court has determined that Counsel for the Department of Justice ("DOJ") and the Department of the Army must **SHOW CAUSE** why they should not be sanctioned for factual misrepresentations in the Government's briefs and declarations. DOJ and Army Counsel named below shall jointly address the following in their response:

(1) Identify, by name and role, the individual(s) responsible for generating the incomplete Administrative Record.

(2) Explain why the FAST TRACK documents were originally omitted from the Administrative Record.

(3) Identify, by name and role, every individual who participated in drafting, reviewing, revising, or approving the original declarations by [***] and [***].

(4) Identify whether agency counsel possessed information at or before the time the original declarations were submitted, indicating that the FAST TRACK documents had been viewed by SSEB members. State why that information was not disclosed to DOJ counsel or corrected before submission.

(5) Identify, by name and role, every individual who participated in drafting, reviewing, revising, or approving the supplemental declarations by [***] and [***].

(6) Identify what investigation, if any, was undertaken before the supplemental declarations were submitted to verify that the AI-generated documents had not been viewed by anyone with decision-making authority.

(7) Identify what, if anything, DOJ counsel did between receiving the declarations and the August 19, 2026, hearing to independently verify their accuracy, and what communications DOJ counsel had with agency counsel or the declarants regarding the factual basis for the representations that no SSEB member or decisionmaker viewed or used the FAST TRACK outputs in evaluating proposals.

(8) State whether any individual recognized the inaccuracies before oral argument and failed to correct them, and if so, why.

(9) Explain the overlap in language between the SSEB's evaluation of [***] proposal and the FAST TRACK summary for [***], and address whether the SSEB considered that output in conducting its technical evaluation of [***] proposal.

On or before October 5, 2026, the following Counsel of Record shall file a consolidated response to this Order to Show Cause why they should not be sanctioned: Senior Trial Attorney, [***]; Trial Attorney, [***]; Attorney-Advisor, [***]; and DOJ Trial Attorney, [***].

**IT IS SO ORDERED.**

s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge